IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Julie Ragsdale,<br><br>                     Plaintiff,<br><br>vs.<br><br>John E. Potter,<br>Postmaster General<br>United States Postal Service,<br><br>                     Defendant. | Civil Action No. 8:05-142-RBH-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended. The plaintiff alleges that the defendant discriminated against her on the basis of her gender, race, and in retaliation for her complaints regarding the same. She further contends that defendant's proffered justifications for not promoting her or assigning her developmental details are subterfuges for actual illegal motives.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTS PRESENTED**

The plaintiff, a white female, began her employment with the Postal Service as a temporary employee in 1983 and became permanent in 1985. The plaintiff began working at Anderson, South Carolina's Post Office in October, 1987 as a City Carrier. She was promoted to the position of Delivery Supervisor in 1992 and held that position throughout her tenure in Anderson, although her job title and duties changed some in 1995.

Based upon a history of poor employee relations at the Anderson Post Office a climate survey was conducted. (Def.'s Mem. Supp. Summ. J. Ex. 1 at 360-62.) Follow-up surveys were conducted in 1998 and 1999. There is some dispute between the parties as to the reasons for the surveys, as well as the validity of the results thereof. It is undisputed, however, that the plaintiff was the subject of at least some of the criticisms levied against the management of the Anderson Post Office, although the parties disagree as to what extent. (*See, e.g., id*.) On April 24, 2000, as a result of those surveys it was announced that five supervisors in the Anderson Post Office, including the plaintiff, should be reassigned. (Def.'s Mem. Supp. Summ. J. Ex. 12; Ex. 11 at 460-64.) The plaintiff contends that the other four supervisors were permitted to choose their new assignment or "detail" but she was not.

On March 2, 2000, prior to the decision to reassign the Anderson supervisors, the plaintiff spoke with Jack Mabe, Manager of Human Resources for the Greater South Carolina District, concerning discrimination against the plaintiff's direct supervisor, Adele Striss.[1] (Pl.'s Mem. Resp. Summ. J. Ex. 1 at 15-16.) The plaintiff contends that subsequent to her conversation with Mabe, the defendant retaliated against her in various ways including the denial of numerous requests for reassignment-details, promotions, and other personnel opportunities, including: Manager Customer Services, Customer Service Analyst, OIC, and Labor Relations positions. She also complains that she was ultimately reassigned to a supervisor's position in Mauldin, South Carolina, nearly three times farther from her home than was the Anderson location. (Pl.'s Mem. Resp. Summ. J. Ex. 1 at 194.)

The defendant contends that, as part of the reassignment plan, the plaintiff was offered various details (Def.'s Mem. Supp. Summ. J. Ex. 9 at 128-32; Ex. 13 at 35-36, 42-

---

[1] The plaintiff's counsel represents Striss in a separate action against the same defendant, *Striss v. Potter*, C.A. No. 8:04-22435.

46), but she refused them (*id*. Ex. 13 at 35-36, 39, 43, 45).  In fact it is alleged that she believed they were "crap."  (*Id*. Ex. 9 at 131, 135; Ex. 13 at 46; Ex. 11 at 465.)

The plaintiff filed Equal Employment Opportunity ("EEO") complaints in April, May, June, July, November, and December 2000.  Immediately after learning that she was being involuntarily reassigned, the plaintiff wrote a letter to the Senior MPOO Lee Asbury stating, "I feel that what you are doing is discriminatory and EEO has been contacted."  (*Id*. Ex. 15.) To that end, the plaintiff believes that she was reassigned to disguise the discriminatory reassignment of three black supervisors from the Anderson Post Office.  (Pl.'s Mem. Resp. Summ. J. at 13 (citing Ex. 12 at 192-94).)  The plaintiff further contends that retaliation and discrimination continued throughout this period, as a result both of her support for Striss and her own personal EEO activity.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has

been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

4

## ANALYSIS

**I.   RETALIATION CLAIM**

The plaintiff contends that she was refused promotions and denied details in retaliation for engaging in EEO activity. Specifically, the plaintiff claims that she spoke with Jack Mabe, Manager of Human Resources, on March 2, 2000, concerning the allegedly discriminatory treatment of Adele Striss. The plaintiff indicated to Mabe that she supported Striss and that she believed her claims of discrimination. (Pl.'s Mem. Resp. Summ. J. Ex. 1 at 15-16.) The plaintiff contends that since that conversation the defendant has retaliated against her by not granting the details, assignments, and promotions of Manager, Customer Services in Orchard Park and/or Berea; Pickens, OIC; Customer Service Analyst; Piedmont OIC; Labor Relations detail; Supervisor, Computer Forwarding System; and Central OIC.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

applies in analyzing retaliation claims under Title VII.[2] *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000).

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *McDonnell Douglas*, 411 U.S. 792.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's prima facie case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court

---

[2] The plaintiff does not attempt to establish her retaliation claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas* burden-shifting proof scheme. As the Fourth Circuit has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The plaintiff nowhere contends that she has direct evidence of retaliation or of a discriminatory failure to promote. She does, however, dedicate substantial energy to describing various statements of supervisory employees of the defendant, which purportedly show discriminatory, ruthless, or dismissive attitudes towards personnel and the EEO processes. (Pl.'s Mem. Resp. Summ. J. at 18-21.) The statements have nothing to do with the plaintiff specifically and some have been made substantially after any of the alleged adverse actions were taken against the plaintiff. The Court affords them little, if any, relevance.

also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

### A.     *Prima Face* Case

In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that she engaged in a protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action. *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The defendant does not strenuously contest that the plaintiff has satisfied the first two elements of her *prima facie* case. Namely, the plaintiff alleges that she was refused promotion and detail requests for expressing support for Striss and for seeking EEO counseling on April 24, 2000 and June 2000. Her support for Striss and decision to seek EEO counseling are protected activities. *See E.E.O.C. v. Navy*, 424 f.3d 397, 406 (4th Cir. 2005) ("[P]rotected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complain[ts] . . . about suspected violations.'"); *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 627 (11th Cir.1983) (describing protected activity simply as "contacting an EEO officer"); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997)

7

(reasoning that meeting with EEO counselor even without alleging discrimination constitutes protected activity under the participation clause, because that clause and the opposition clause serve distinct functions); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 94-95 (D.D.C. 2005) ("Initiation of EEO counseling to explore whether an employee has a basis for alleging discrimination constitutes protected activity, even in the absence of an unequivocal allegation of discrimination.")    Moreover, denial of promotional opportunities and reassignment can constitute an "adverse employment action."  *See Bryant*, 333 F.3d at 544; *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001); *DiMeglio v. haines*, 45 F.3d 790, 804 & n.6 (4th Cir. 1995) (considering a reprimand and reassignment of duties as an adverse employment action).    Recently, in *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), the United States Supreme Court articulated an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim.  Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination. " *Id*. at 2415 (citation omitted).  The retaliation provision of Title VII is intended to prohibit employer actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."  *Id*.  Although normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *id*., an employer's actions are to be considered in light of the "circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id*. at 2417.  In *Burlington*, the Supreme Court applied this analysis expressly to a reassignment of job duties.  *Id*. at 2417.

In the present case, the plaintiff has submitted evidence that after the decision to transfer five supervisors, including herself, from the Anderson Post Office she was (1) not given the same consideration as her peers in selecting her reassignment (*see* Pl.'s Mem. Resp. Summ. J. Ex. 1 at 58-59); (2) denied requested reassignments (*see* Pl.'s Mem. Resp.

8

Summ. J. Exs. 16, 17); and (3) ultimately reassigned to a location in Mauldin, South Carolina, which was three times farther from her home than the Anderson Post Office (*see* Pl.'s Mem. Resp. Summ. J. Ex. 1 at 194). Although the defendant has a different version of these facts, the Court is not permitted to weigh the parties' accounts in the balance. The plaintiff has also testified that the reassignment caused a specific burden on her insofar as she has to take her children to school in an opposite direction from the Mauldin Post Office. (*See* Pl.'s Mem. Resp. Summ. J. Ex. 1 at 194.) In *Burlington*, the Supreme Court expressly cited a "young mother with school age children" as an example of a particularized circumstance, which might transform a petty slight or annoyance into an adverse and actionable employment action. *See Burlington*, 126 S. Ct. at 2415. Accordingly, genuine issues of fact remain as to the second element of the plaintiff's prima facie case. The defendant does not seriously contend otherwise.

Although in cursory fashion, the defendant, however, does contend that the plaintiff cannot establish the third element of her *prima facie* case in that no causal link exists between the alleged protected activities and any denial of promotion or detail requests. (Mem. Supp. Summ. J. at 33.)

Causation is the most often disputed element of the *prima facie* case in retaliation claims. *See Generally* C. Geoffrey Weirich, *Employment Discrimination Law* at 510 (Supp. 2002). Courts, however, typically analyze causation by evaluating whether a temporal proximity exists between the time when the protected activity becomes known by the employer and the adverse action taken against the employee. *Compare Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998) ("[T]hirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation."); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists

between the two."); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (four month lag between protected activity and termination not sufficient to justify an inference of causation) *with Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (less than two months after making complaint to management and 10 days after filing agency complaint was proximate enough to satisfy *prima facie* causation requirement); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 939 (7 th Cir. 1996) (denial of vacation pay just two weeks after the plaintiff filed an EEOC complaint was close enough.)

The Fourth Circuit has held that "very little evidence of a causal connection is required to establish a prima facie case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a *prima facie* retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later).

The Court is persuaded that the plaintiff has created a genuine issue of fact as to the causation element of her *prima facie* case. The plaintiff expressed her support for Striss to Mabe and a belief that Striss had been discriminated against on March 2, 2000. (*See* Pl.'s Mem. Resp. Summ. J. Ex. 1 at 15-16.) On April 26, 2000, she wrote a letter to Senior MPOO Lee Asbury stating simply, "I feel that what you are doing is discriminatory and EEO has been contacted. (*See* Pl.'s Mem. Resp. Summ. J. Ex. 15.) The plaintiff filed two other EEO complaints in June and July of 2000. The plaintiff has also produced evidence that she was denied her requests for reassignment in April and May of 2000 (*see* Pl.'s Mem. Resp. Summ. J. Ex. 15, 16) and was ultimately reassigned to an inconvenient location in October, 2000 (*See* Pl.'s Mem. Resp. Summ. J. Ex. 1 at 194.)

Under Fourth Circuit precedent, a month to five months proximity between the time when the protected activity became known to the employer and the adverse employment action is sufficiently close in time to satisfy the causal element of a *prima facie* case of retaliation.  *Williams*, 871 F.2d 452 (3 month); *Carter v. Ball*, 33 F.3d 450 (5 month). Accordingly, the plaintiff has created genuine issues of fact in regards to the third element of her *prima facie* case.

It should be noted that the plaintiff does not premise her retaliation claim so much upon the actual decision to reassign her from the Anderson Post Office, itself.  In fact, she contends that her reassignment was a necessary disguise for the discriminatory reassignment of three black supervisors from the same office.[3]  (*See* Pl.'s Mem. Resp. Summ. J. Ex. 12 at 192-94.)   Instead, the plaintiff claims that the defendants have retaliated against her in the *way* her reassignment and detail requests were considered and resolved.

### B.    Legitimate Non-Discriminatory Reason

The defendants have met their burden of production by identifying, generally, the following legitimate, non-discriminatory reasons for reassigning her from the Anderson Post Office and for denying her detail and promotion requests: (1) complaints had been made against her by employees under her supervision, (2) she was not the most qualified candidate for certain details, (3) she refused certain details, and (4) she prepared an inadequate application.  Unsatisfactory job performance and a failure to prepare proper documentation constitute legitimate and non-discriminatory reasons for termination of employment. *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including,

---

[3] This position would undermine any claim of the plaintiff's that the decision to reassign her was based on her own gender or race, if that is what she so intended.  As stated, she believes that she was, in fact, reassigned on account of others race.

her tardiness and failure to complete her monthly summaries.") Likewise, "relative employee qualifications [is] widely recognized as [a] valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004).

### C.     Pretext

Because the defendant has proffered legitimate, non-discriminatory reasons, the plaintiff bears the burden of demonstrating that the real reason for discharge is an illegal one. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000). As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144. The analysis is most easily conducted by considering the defendant's legitimate, non-discriminatory reason and the plaintiff's response for each promotion or detail request on a case-by-case basis.[4]

> **1.     Manager Customer Services, Berea, SC (April 25, 27, 28, 30, May 19, August 1, 23, 2000) and Manager Customer Services, Orchard Park (July 26, August 1, 23, 29, and September 7, 2000)**[5]

The defendant states that although the plaintiff applied for the positions of Manager, Customer Services, at Orchard Park and Berea, she was not selected for an interview because (1) she was less qualified than the best applicants, Jeff White and Carolyn Clark, (Mem. Supp. Summ. J. Ex. 49 at 82; Ex. 50 at 364-80) and (2) submitted what appeared to be a quickly and sloppily prepared application, (Mem. Supp. Summ. J. Ex. 51 at 2).

---

[4] The plaintiff has not actually tried to rebut the legitimate, non-discriminatory basis for rejecting her application in regards to each detail at issue in this case. Of course, for those she does not address, she has failed to meet her burden at this stage of the *McDonnell Douglas* framework.

[5] The specific dates in parenthesis next to each position reflect those alleged by the plaintiff but are not necessarily supported by the record in detail.

Notably, Striss,[6] who the plaintiff supported in her claims of discrimination to Mabe, was part of the review committee that denied the plaintiff the interview and has testified that the plaintiff was less qualified than White and Clark.  (Mem. Supp. Summ. J. Ex. 49 at 82; Ex. 50 at 364-80; Ex. 51.)  The Court considers it relevant that the plaintiff nowhere rebuffs the compelling testimony of a co-worker and witness – that the plaintiff was less qualified for the positions than White and Clark -- who otherwise appears allied with her.[7]

The plaintiff has not demonstrated that she has superior qualifications to White and Clark; although, she certainly believes as much.  Unfortunately, her "self assessment" and "assertions concerning her own qualifications and the shortcomings of her co-workers" falls "far short."  *Evans*, 80 F.3d at 960-61. As to both candidates, she has tried to mechanically compare her tenure of service and job positions with those of Clark and White.[8]  (Pl.'s Mem. Resp. Summ. J. at 32-33.)   Of course, whether someone is qualified for a job is substantially more nuanced than simply the job titles that the person has held.  The defendants were entitled to consider all variety of factors and the record reflects those considerations.

---

[6] In her recitation of the facts, the plaintiff recites evidence that she was a good performer, including statements made by Striss.  The question in this case is not whether the plaintiff was performing her job properly.  She was not terminated for poor performance. The question, repeatedly, is whether she was entitled to the details she requested over other applicants or in spite of other considerations that prohibited the defendant from granting the requested detail. Evidence of her general good performance, therefore, is not very useful.

[7] The record, generally, reflects, and the plaintiff does not dispute, that she and Striss were personal friends.  (*See, e.g.*, Def.'s Mem. Supp. Summ. J. Ex. 2 at 11-12; Ex. 3.)  That relationship allegedly had some effect on the work environment.  *Id*.  These facts are relevant only insofar as they enhance the likelihood that Striss's testimony concerning the plaintiff's qualifications for the managerial positions is credible.  The plaintiff has not presented any evidence to rebut the proffer of such credible testimony.  In fact, she has not even addressed it.

[8] The plaintiff also emphasizes that she has a four-year college degree and White does not. It is not entirely clear from the record whether he actually ever obtained a college degree. (Pl.'s Mem. Resp. Summ. J. at Ex. 13.)  But, what is clear from White's application is that he went to both Greenville Tech and the University of South Carolina - Spartanburg for a combined total of nearly six years.  The Court does not count as a material point any difference between her four-year degree and the six years White apparently spent in some college program.

13

Specifically, the review committee was unimpressed by what has been consistently characterized as an inadequately prepared application of overly generalized responses. (Mem. Supp. Summ. J. Ex. 50 at 368-71, 375-77; Ex. 51; Ex. 52 309-318.) The committee was also compelled by White's and Clark's experience in Greenville and their performance under the STAR[9] process relative to other applicants, including the plaintiff. *Id*. The plaintiff's rote comparison of job history and a claim of "considerably greater length of time in Management" is simply too thin a reed to stand, in the face of other unrebutted and objective rationale articulated by the review committee.[10]

Ultimately, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans*, 80 F.3d at 960-61 (quotation omitted). "Title VII is not a vehicle for substituting the judgment of the court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995) (citing EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992) (noting that the federal courts should "not . . . direct the business practices of any company")). "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez*, 57 F.3d at 383 (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 , 577 (1978)); *see also Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 280-82 (4th Cir. 2000) (noting that "[p]ersonality conflicts and questioning of job performance are unavoidable aspects of employment"). Where an employer provides a legitimate, nondiscriminatory reasons for its actions, "'it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was the true reason for

---

[9] The STAR (Situation, Task, Action, and Results) process permits an applicant to describe their response and performance to various work-place situations. (*Id*. Ex. 52 309-318.)

[10] The plaintiff contends that the defendant relied upon subjective considerations, which "stray" from the defendant's own requirements that the USPS will only consider "objective" criteria in making decisions. The Court simply disagrees. The record reflects substantial objectivity in the comparison of candidates.

[the employer's action].'" *Hawkins*, 203 F.3d at 279 (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

The plaintiff disagrees that she was less qualified for the Manager Customer Services positions; but she has not created any genuine issue of fact in that regard. The Court will not substitute its judgment for the defendants. Nor could any reasonable jury conclude that the reasons for selecting Clark and White over the plaintiff were false based on the plaintiff's evidence.

### 2.   Customer Services Analyst (April 27, 30, May 19, July 26, August 23, 29, and September 7, 2000)

The plaintiff contends that "after being involuntarily transferred from Anderson and in the midst of her filing EEO complaints; [sic] Darlene Dixon, black female, was *ultimately* selected for the detail" of Customer Service Analyst. (Pl.'s Mem. Resp. Summ. J. at 34 (emphasis added).) However, in her own letter, dated September 13, 2000, the plaintiff admitted that Dixon held that position *prior* to the plaintiff applying for it. (Def.'s Mem. Supp. Summ. J. Ex. 40; Ex. 6 at 5.) The plaintiff makes no response to this fact, as emphasized in the defendant's brief. Instead, the plaintiff summarily contends that Dixon had an unfair advantage in regards to the position because she had been permitted to serve in the detail longer than Postal regulations generally allow. Of course, the plaintiff has cited no evidence to this end and the Court is unpersuaded, regardless.[11] There is simply no evidence of record from which a jury could reasonably conclude that the defendant acted with retaliatory intent for some failure to eject Dixon from her position at the plaintiff's request. The plaintiff cannot seriously contend otherwise.

### 3.   Labor Relations (April 27, May 19, August 29 2000)

The defendant has produced evidence that budgetary constraints prohibited consideration of the plaintiff for the Labor Relations position. (Def.'s Mem. Supp. Summ.

---

[11] It should be noted that the plaintiff was previously denied the CSA position prior to any of her protected activity. (*See* Def.'s Mem. Supp. Summ. J. Ex. 6.)

J. Ex. 37 at 264-67.)  The plaintiff makes no rejoinder whatsoever and only summarily argues, in a single sentence, that she was more qualified than Steve Gibson.  She has utterly failed to produce any evidence to rebut the defendants legitimate reason for rejecting her application.

As far as the Court can discern, the plaintiff makes no rejoinder to the defendant's legitimate, non-discriminatory reasons for denying her request for the OIC, Pickens, SC detail (April 28, 30 and May 19, 2000) or the Manager of CFS detail (September 7, 2000).  Accordingly, no genuine issues of fact remain as to those details.

### 4.     Other Evidence of Pretext

The plaintiff has generally alleged that she was not permitted to pick her detail in the same way that the other four supervisors were permitted and that this fact is evidence of retaliation.  While the Court agreed that this fact, in the least, created a genuine issue, under the *prima facie* case, as to whether the defendant may have taken an adverse employment action against her, she has otherwise failed to produce, at this juncture, evidence that she was sufficiently qualified for any other position than the one she was ultimately forced to take in Mauldin.  In other words, based on the record, a reasonable jury could not conclude that the burden of traveling to the Mauldin detail was the result of any other factor than her inferior qualification for any other available detail available or other legitimate reasons, including the fact that she refused various details (*see* Def.'s Mem. Supp. Summ. J. Ex. 13 at 35-36, 39, 43, 45).

Moreover, the temporal proximity established in the plaintiff's *prima facie* case, alone and on the facts of this case, is insufficient evidence of pretext from which a jury could infer discriminatory retaliation.  *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 & n.5 (8th Cir. 1998) (holding that while close proximity in timing may be sufficient for a jury to find the causation element of plaintiff's prima facie case, it is insufficient to establish pretext); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d 1997) ("[E]ven if timing alone can prove causation where the discharge follows only two days after the complaint, the mere

fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."); *Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see, e.g., Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 182 (4th Cir. 1998) (finding the plaintiff failed to establish pretext concerning the supervisor's failure to complete reference forms, despite proof that the supervisor knew the plaintiff had made an EEO complaint).

To find causation on the basis of this "bare-boned evidence" of temporal proximity "asks the court to move beyond inference and into the realm of mere 'speculation and conjecture.' " *Gibson*, 160 F.3d at 181 (internal quotation marks and citation omitted). With no further evidence supporting her theory, a reasonable factfinder could not draw from the record the conclusion that the defendants terminated Sheriff's employment in retaliation for her protected activity. *See id.* "[A] jury may . . . not be allowed to infer [retaliation] from evidence that does no more than suggest it as a possibility." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 245 (4th Cir. 1982). Accordingly, the plaintiff's retaliatory discharge claim must be dismissed.

## II.     GENDER DISCRIMINATION - FAILURE TO PROMOTE CLAIM

The plaintiff devotes only a page and a half to analyzing her failure to promote claim based upon gender discrimination and focuses exclusively on the Manager Customer Servies position ultimately detailed to Jeff White. To establish her *prima facie* case the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for the position in question; (3) that she was qualified for that position; and (4) that the USPS rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003). Even if the plaintiff could establish a *prima facie* case of discrimination, she has made virtually no attempt to rebut the defendant's legitimate, non-discriminatory reasons

for selecting White over her. The Court rejects this rebuttal for the same reasons discussed *supra*, concerning White.[12]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment be granted.

IT IS SO RECOMMENDED.

                                            s/Bruce H. Hendricks
                                            United States Magistrate Judge

August 15, 2006
Greenville, South Carolina

---

[12] The Court perceives, from the plaintiff's brief in response to summary judgment, no claims based upon intolerable work conditions, hostile work environment, disability discrimination, or retaliation in the form of unprecedented scrutiny. These claims were not expressly pled in the Complaint and, if ever intended, are now abandoned. The plaintiff has also not made any showing considering her race discrimination claim. The Court considers that claim abandoned.