UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Julie Ragsdale, )<br>)<br>    Plaintiff, )<br>)<br>)<br>)<br>)<br>John E. Potter, )<br>Postmaster General )<br>United States Postal Service, )<br>)<br>    Defendant. )<br>_____) | Civil Action No.: 8:05-142-RBH<br><br><br><br>**ORDER** |

**Procedural History**

The plaintiff filed this action on January 18, 2005 alleging causes of action for retaliation and discrimination on the basis of race and gender in violation of Title VII, 42 U.S.C. §2000e. The defendants filed an answer on April 20, 2005. Defendants filed a motion for summary judgment and supporting memorandum on February 15, 2006.

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Bruce Hendricks, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636 and Local Rule 73.02(B)(2)(g). In her Report, Magistrate Judge Hendricks carefully considers the issues and recommends that the defendant's motion for summary judgment be granted. Plaintiff filed objections to the Report on September 6, 2006. Defendants filed a response on September 14, 2006.

In her objections, the plaintiff challenges the recommendation by the Magistrate Judge that she did not adduce sufficient evidence to show that the defendant's proffered reasons for its employment actions were pretextual.

1

In conducting its review, the Court applies the following standard:

The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

<u>Wallace v. Housing Auth. of the City of Columbia</u>, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

## **Facts**

The court agrees with the factual and procedural background as set forth by the Magistrate Judge in her Report and Recommendation. The court therefore adopts the Magistrate Judge's version of the facts in this case to the extent such facts are not specifically included herein.

The plaintiff (a white female) was employed as a supervisor with the defendant United States Postal Service, in Anderson, South Carolina. She became employed with the postal service in 1983 in New York and transferred to Anderson as a letter carrier in 1987. She became a delivery supervisor in 1992. In 1997, she became one of five Customer Service Supervisors. Her work hours were from 8:30 until 5:30 Monday through Friday, and the post office was eight miles from her home. Numerous personnel problems existed at the Anderson Post Office, and, as a result, a climate survey was conducted in 1998, with follow-up climate surveys later in 1998 and in 1999.

Plaintiff met with Jack Mabe, the manager of post office operations, on March 2, 2000 and allegedly complained that she believed that Adele Striss, the post master, was being treated unfairly. The plaintiff and the other supervisors were informed on April 24, 2000 that they were being

reassigned from the Anderson branch, effective May 3, 2000. As part of the reassignment plan, the plaintiff was offered an Officer in Charge (OIC) position at the Six-Mile Post Office. (Defendant's Exhibit 13 at 35-36). The plaintiff would have kept her same level and pay, although the office was an EAS 15 office which was a lower level office than Anderson. The plaintiff refused the position. She was also offered an OIC assignment in the Townville and Central Post Offices. (Defendant's exhibit 9 at 128-32 and exhibit 13 at 42-46.) She also refused these assignments. The defendant then arranged for the plaintiff to trade positions with the supervisor in the Piedmont Post Office. (Defendant's exhibit 11 at 469). She was directed in writing to report to that position on May 3, 2000 at 8:15 a.m. (Defendant's exhibit 17). However, the plaintiff did not report to Piedmont on May 3, 2000, but instead, on May 2, 2000 she sent a letter explaining that she could not work on weekends due to family obligations. (Defendant's exhibit 18). She was then directed to report to Piedmont on May 8. (Defendant's exhibit 19). However, the plaintiff informed the defendant that the situation regarding her days off had not been resolved and she did not report to Piedmont on May 8. (Defendant's exhibit 20).

Plaintiff contacted an EEO counselor on April 24, 2000 and sent a letter to a postal supervisor on April 26, 2000, indicating that she believed that she was being discriminated against in connection with the reassignment. On May 9, 2000, the plaintiff left work due to anxiety and remained on medical leave for the next five months. The history of the plaintiff's applications for other positions due to the reassignment decision will be discussed hereinbelow in connection with discussion of the plaintiff's objections. Plaintiff was eventually reassigned to a position as a supervisor at the Mauldin post office on October 26, 2000. She is currently the postmaster at the Starr, South Carolina post office.

The plaintiff contends that she was treated differently from similarly situated male and African-American employees in that the other supervisors were allowed to choose the location of their new

"detail" and that she was not allowed to do so in retaliation for her complaints to the EEOC and to her supervisors. The defendant produced the following as legitimate, nondiscriminatory reasons for the reassignment and the refusal to grant the plaintiff's placement requests: complaints from employees under her supervision; other candidates for various positions for which the plaintiff applied were more qualified; the plaintiff actually refused some of the "details"; and her application for other positions was prepared in an unprofessional manner.

Defendants filed a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P, arguing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

## Legal Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that judgment on the pleading is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Commrs, 845 F.2d 716, 718 (4th Cir. 1991) (citing Celotex

4

Corp v. Catrett, 477 U.S. 317, 322 (1986)). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry, Inc., 877 F. Supp. 1002, 1005 (E.D. Va 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, 977 F.2d 872, *citing* Celotex Corp., supra. Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993); DeLeon v. St. Joseph Hosp., Inc., 871 F.2d 1229, 1223 n. 7 (4th Cir. 1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987); Evans v. Techs. Applications & Servs. Co., 875 F. Supp. 1115 (D. Md. 1995).

### Legal Framework

The parties agree that the proper analysis of this case is under the McDonnell Douglas burden shifting test. Under that analysis, the plaintiff has the initial burden of demonstrating a prima facie case of discrimination: (1) she is a member of a protected class; (2) she was qualified for the job and her job performance was satisfactory; (3) she has suffered an adverse employment action[1]; and (4) other

---

[1] In the case at bar, the plaintiff asserts that denial of promotional opportunities and reassignments which results in substantial hardship or a significant change in job duties constitutes

employees who are not members of the protected class were treated differently under apparently similar circumstances. Bryant v. Bell A. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002). In order to prevail on a disparate treatment claim for failure to promote, the plaintiff must demonstrate that (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. Bryant, 333 F.3d at 544-545. In order to establish a *prima facie* case of Title VII retaliation, a plaintiff must prove that she engaged in a protected activity, that an adverse employment action occurred against her, and that there was a causal link between the protected activity and the adverse employment action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004). In the case at bar, the Magistrate Judge found that the plaintiff has satisfied her prima facie case, and neither party has objected to this finding.

Once a prima facie case is established by the plaintiff, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). After the defendant has met this burden of production, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is merely a pretextual reason for intentional discrimination. Reeves, 530 U.S. at 143; Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

---

"adverse employment action," citing Bryant v. Aiken Regional Medical Centers, Inc., 333 F.3d 536, 544 (4th Cir. 2003) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). Additionally, an adverse employment action in a retaliation case is any action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co., 126 S.Ct. 2405 (2006).

**Discrimination** *Vel Non*

Since the defendant has articulated a legitimate, nondiscriminatory reason for reassigning the plaintiff, the burden shifts to the plaintiff to show that the reason articulated is false and merely pretext for intentional discrimination or retaliation. Reeves, 530 U.S. 133; Hill, 354 F.3d at 285. In satisfying this burden, the perception of the employer is critical. Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir. 2000), cert. denied, 531 U.S. 875 (2000). The Court finds that the plaintiff has failed to offer sufficient competent evidence that the reasons given by the defendant are false and pretextual. Even viewed in the light most favorable to the plaintiff, no reasonable jury could determine that racial or gender discrimination or retaliation were the reasons for the defendant's actions.

## Plaintiff's Objections

The plaintiff first asserts that, to the extent that the Magistrate Judge places any weight on alleged complaints against the plaintiff by employees under her supervision, this is contrary to the evidence when taken in a light most favorable to her as required by the standard on motion for summary judgment. She argues that the OIG Desk Review in the spring of 2000 was prompted by one anonymous complaint and that there is no evidence that the one complaint was against the plaintiff. However, the record before the Court contains testimony from the administrative hearing regarding the reason for the climate survey, which was described as follows:

> I got complaints, several complaints. A situation took place with Mrs. Ragsdale and Mr. Marcus, I think Scott is his last name. . . An incident had transpired there with shouting and yelling and things like that and I had received calls to my office, complaints regarding that. . . I had gotten complaints regarding the perceptions in the office that Julie [plaintiff] was running the office and that Mrs. Striss [the postmaster] did not have the skills to run the office because she was relying a lot on Julie and that Julie was making decisions that was upsetting the workplace and I discussed this with her.

Transcript of hearing, pp. 361-362.

It is true that the defendant apparently did not consider the transfer of the supervisors to be punitive, and it appears from the plaintiff's evidence that she has some excellent qualities. However, the fact that complaints had been made regarding the plaintiff could have legitimately played a role in decisions regarding where to reassign her. This objection lacks merit.

The plaintiff also asserts that there are questions of fact regarding her position that she was "at least as, if not more, qualified than the successful candidates who were not engaged in protected activity." Objections, page 4. Again, the Court disagrees. First, the plaintiff contends that she had nine years more management experience than Jeff White, the Caucasian male who was chosen for the manager of customer service at Orchard Park, and seven years more management experience than Carolyn Clark[2], the Caucasian female selected for the customer service manager for the Berea branch. However, the Court notes that making an employment decision solely on the number of years of experience would not be wise but that many factors are involved in employment decisions. "Title VII is not a vehicle for substituting the judgment of the court for that of the employer." Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir. 1995). "But when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000), *citing* DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998). "A plaintiff alleging a failure to promote can prove pretext by showing that he was **better qualified**, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Savings Bank, F.S.B.,

---

[2] Both plaintiff and Clark had four-year college degrees, although the plaintiff's degree was in business and Clark's was in music. White did not have a college degree but had attended college for six years.

434 F.3d 249 (4th Cir. 2006) (emphasis added). "[R]elative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). "When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Heiko, 434 F.3d at 261. On the contrary, where a plaintiff makes a "strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." Id. Unlike the plaintiff in Heiko, the plaintiff has not made a strong showing that her qualifications are demonstrably superior to those of the individuals chosen for the positions.

The instant case is somewhat analogous to Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005). In Diamond, the Fourth Circuit affirmed the grant of a motion for summary judgment in a racial discrimination case based on failure to promote. The employee had argued that the employer failed to recognize her "prior experience as management experience" and that this should be considered evidence of discriminatory intent.

> Assuming *arguendo* that Diamond had more management experience than Scott and that Colonial failed to recognize the extent of Diamond's experience, we are unable to conclude that Diamond has demonstrated pretext. . . Thus, while management experience was a factor to be considered in awarding the promotion, it clearly was not intended to be dispositive. . . Moreover, Diamond has failed to rebut the reasons documented in contemporaneous notes as to why Colonial awarded the promotion to Scott. . . That is, she has failed to address the fact that on each of the nine factors considered . . . "operations knowledge, business sense, decision making, communication skills, high degree of initiative, flexibility/openness, leadership skills, hands-on manager, and interpersonal skills" Scott scored higher than Diamond, and each manager to review their applications, including two African-Americans, agreed that Scott was the superior candidate.

Id. at 319.

In the case at bar, the plaintiff claims that she has seven to nine years more management

9

experience than the candidates who were hired for Orchard Park and Berea. However, as noted above, the amount of management experience is only one of many factors considered by the committee and in the plaintiff's case was offset by other factors. The plaintiff was not one of any committee member's top two candidates, and the members of the committee found that her application was poorly prepared.

Plaintiff also contends that postal regulations require that selecting officials use the criteria set forth in the vacancy announcement[3] and that this was not done in this case. The record reflects that the committee looked at each applicant's STAR (Situation, Task, Action, and Result) score, which amounted to the same factors as used on the vacancy announcement. The fact that the committee also considered the fact the individuals hired had already worked in the Greenville office, a factor not specifically required, does not prove that discrimination occurred. This argument lacks merit.

Plaintiff contends that the record fails to support the finding by the Magistrate Judge that her former supervisor, Adele Striss, found her to be less qualified than White and Clark. However, on the contrary, the record contains the affidavit of Ms. Striss, entry #34-11, in which she states:

> "The review board used the standard selection process. Since all the applicants in this package were 'qualified' we attempted to apply a fair approach to identifying three or four individuals for interview. . . I looked at years of service, present position, previous positions, or if they had ever been detailed to this type of position. 991 narratives-content, spelling, grammar, substance, (Star Process). Station Managers need a diverse

---

[3] The EEOC decision, entry #34-10, indicates that the requirements for the Orchard Park position "included (1) knowledge of postal policies, safety and maintenance of facilities and vehicles; (2) knowledge of provisions in the current collective bargaining agreement, including those relating to overtime, corrective action, and grievance resolution; (3) knowledge of postal operations in carrier stations, including delivery and collection service, window and box service, and mail distribution and dispatch; (4) knowledge of accounting functions and budgeting activities; (5) ability to manage, including planning, organizing, directing and monitoring programs, projects and the work of people to meet organizational goals; (6) ability to communicate orally and in writing at a level sufficient to consult with representatives of employee organizations, to assist commercial mailers in resolving problems, and to give performance feedback to subordinates; (7) ability to evaluate staffing and training needs; (8) ability to identify and resolve operational and administrative problems; and (9) ability to analyze data for the purpose of evaluating operational performance and identifying deficiencies."

> background in delivery, retail and finance. People skills are critical and presentation of your 991 does play an important role in displaying your attention to detail and your wanting to present the best possible image. . . **We each had the same two of the candidates that were rated far exceeds on our individual KSA's–they were identified for interview.** . . We then interviewed the following people: Carolyn Clark, Jeffrey White, Ashley (Joe) Fraiser, Floyd Young and Marilyn Harris. All had details as station manager and demonstrated their ability to perform the job. All had worked or are working for the Greenville Office in permanent positions. After the board interviews we selected the following for final interview: Carolyn Clark, Jeffrey White, Floyd Young and Marilyn Harris.
>
> I did tell Julie that Dennis felt her 991 looked like it was pieced together. It was a poor photocopy and had several sections with different typefaces. She stated she had submitted it at the last minute because she was not sure if she was applying for the job. She said she got the posting late because she was out at the time. (Emphasis added)

Striss accordingly admitted that she and the other members of the review board considered two candidates other than the plaintiff to be the top two candidates. This argument lacks merit.

Plaintiff asserts that she should have been hired for the CSA position that was held by an African American female, Darlene Dixon. Ms. Dixon held the "detail", which was a temporary position. However, the evidence does not reveal that the decision to allow Ms. Dixon to continue in this "detail" was in some way retaliatory, especially where the CSA was expected to work overtime and weekends occasionally and the plaintiff had requested an accommodation as to her schedule. Plaintiff also claims that she should have been awarded the Labor Relations "detail", in spite of the defendant's position that she was not given this position due to budgetary constraints. However, the plaintiff has not produced sufficient evidence that the plaintiff should have been selected for the position where the position was given to the former union president who had more labor experience. Again, the plaintiff cannot prove pretext.

Plaintiff contends that the Magistrate Judge incorrectly found that she declined certain other details. However, in her objections, she then goes on to comment that the details which were offered were "significantly different from her job in Anderson", were farther from her home, required longer

11

hours, or would have constituted a demotion. Therefore, it appears that the plaintiff did in fact decline some details which were offered. Regarding the OIC Pickens detail, the plaintiff alleges that, although she made a verbal request for the position, it was awarded to David Alexander who was also employed in the Anderson post office. The defendant states that Alexander was already a supervisor in the Pickens office and that this is the reason he was asked to be an OIC there for budgetary reasons. Plaintiff has not pointed the Court to any evidence to support her allegation that Alexander was employed in the Anderson post office or as to any retaliation or discrimination because she was not given this position. "The burden is on both parties to file necessary materials with the court to support their claims for and against summary judgment." Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215, (4th Cir. 1993), *citing* General Office Products Corp. v. A.M. Capen's Sons, Inc., 780 F.2d 1077, 1078 (1st Cir. 1986).

Plaintiff asserts that the defendant's argument that she was not chosen for many positions due to the inadequacy of her application is not supported by the evidence. However, it appears that the defendant made this argument only with regard to the Orchard Park and Berea applications as noted above. Plaintiff's application as compared with other applicants for those positions was found, even by Ms. Striss, to be lacking.

Finally, the plaintiff contends that the Magistrate Judge overlooked circumstantial evidence regarding the defendant's retaliatory animus. Specifically, the plaintiff asserts that certain comments were made by supervisors such as the one allegedly made by Steve Niedziela at a coaching class for employees in 2003, "when someone files an EEO against me I don't get mad, I get even." However, as the defendant points out, the alleged comment was made after the time period relevant to this dispute. The other comments referenced by the plaintiff also do not prove retaliatory animus during the time period alleged by individuals responsible for making decisions regarding the plaintiff.

12

The plaintiff also contends that the post office discriminated against her on the basis of race and gender in refusing to give her the positions that she desired. The Court finds that, even assuming the plaintiff has proved a prima facie case, she has not proved intentional discrimination regarding these claims or that the proffered reasons were pretextual as discussed hereinabove. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981) (Ultimate burden of persuasion lies with the plaintiff.)

### Conclusion

The plaintiff has not provided the Court with sufficient evidence which could be used to establish pretext and show that the real motivation of the defendant was to discriminate against Ragsdale or to retailiate against her. The Court is of the opinion that "no rational fact finder could conclude that the actions by the defendant were discriminatory." Rowe v. Marley Co., 233 F.3d 825 (4th Cir. 2000). I find as a matter of law that there are no issues of material fact and that the defendants are entitled to summary judgment.

For the foregoing reasons, the undersigned overrules all objections, adopts and incorporates the Report and Recommendation of the Magistrate Judge as modified herein, and **GRANTS** the defendant's motion for summary judgment.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

September 28, 2006
Florence, South Carolina

13